### CHEEK v. BOYD et al.

(Court of Civil Appeals of Texas. Jan. 31, 1911.)

1. TRIAL (§ 260*)—INSTRUCTIONS—REQUEST.

Requested instructions which are covered by the charge as given are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

2. FRAUDS, STATUTE OF (§ 160*)—INSTRUCTION —EVIDENCE.

Where, in an action to recover for medical services alleged to have been rendered for another at defendant's request, the evidence tended strongly to prove that defendant's promise was an original and not a collateral one, a requested instruction that under the statute of frauds plaintiff could not recover unless defendant's

promise was in writing, but which contained no reference to the evidence showing an original promise, was properly refused.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 379; Dec. Dig. § 160.*]

3. PHYSICIANS AND SURGEONS (§ 24*) — ACTION FOR SERVICES—QUESTION FOR JURY.

In an action by a physician to recover for services rendered to another at the request of defendant, evidence held sufficient to present a question to the jury as to whether defendant contracted to pay for the services rendered.

[Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 24.*]

4. TRIAL (§ 252*)—INSTRUCTION—CONFORMITY TO EVIDENCE.

An instruction presenting a theory not supported by the evidence is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 596; Dec. Dig. § 252.*]

Appeal from Harris County Court; A. E. Amerman, Judge.

Action by J. G. Boyd and others against J. R. Cheek. From a judgment for plaintiffs, defendant appeals. Affirmed.

John Charles Harris and Harris & Harris, for appellant. R. W. Franklin, for appellees.

McMEANS, J. J. G. Boyd, a physician and surgeon, sued J. R. Cheek and the firm of Hamil & Stewart, defendants, to recover the principal sum of $795 for medical services rendered to one Samuel Cisco upon the request of defendants, and for his board, etc., during the time Cisco was an inmate of plaintiff's sanitarium. The defendant, in addition to denying generally the right of plaintiff to recover against him, specially pleaded that the debt was one owing by Cisco to plaintiff, and that the promise or agreement of defendant to pay it as alleged in plaintiff's petition was not in writing, nor was there any memorandum thereof in writing signed by him or by any person thereunto by him lawfully authorized to sign the same, and that such promise, if any was made, was in contravention of the statute of frauds. Defendants Hamil & Stewart also answered, but as a verdict was instructed in their favor, as to which no complaint is made, the character of the defense set up by them becomes immaterial. A trial before a jury resulted in a verdict and judgment for plaintiff against defendant Cheek for $795, being the amount sued for, with 6 per cent. interest per annum from January 1, 1908, from which the defendant Cheek has appealed.

The issue raised by the pleadings of defendant above referred to was submitted to the jury by the second paragraph of the court's charge, as follows: "If you believe from the evidence that J. R. Cheek, acting through an agent or agents thereunto duly authorized to act for him, placed one Cisco in the sanitarium of the plaintiff, with instructions to treat said Cisco, then J. R.

---

Cheek would be liable for the reasonable value of the professional services, as well as for the reasonable value of the expenses of treatment of said Cisco by plaintiff. You are charged that under the law a man cannot be charged with the debt of another, unless the agreement to pay the debt of another is evidenced by an instrument or memorandum in writing signed by the party so sought to be charged or by some person by him thereunto authorized. If you believe from the evidence that the debt sued for was the debt of Cisco, or of Hamil & Stewart, or that credit was extended to Cisco or to Hamil & Stewart, and that J. R. Cheek agreed to guarantee the payment of the bill or agreed to see that the bill was paid, then you are charged that there was no agreement in writing on the part of J. R. Cheek, and you will return a verdict for the defendant J. R. Cheek." Appellant makes no objection to the form of this charge.

By his first assignment of error appellant complains of the refusal of the court to give the following special charge requested by him, viz.: "You are instructed that the statutes of Texas provide that no action or lawsuit shall be brought in any of the courts of Texas in any of the following cases, unless the promise or agreement on which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized, to wit: To charge any person upon a promise to answer for the debt, default, or miscarriage of another. Therefore, if you believe from the evidence that the plaintiff Dr. J. G. Boyd is attempting to charge the defendant, J. R. Cheek, upon a promise to answer for the debt of Samuel Cisco, or of the defendants Hamil & Stewart, and if you believe from the evidence that there is no promise or agreement, or memorandum thereof, in writing, signed by the said defendant, J. H. Cheek, or signed in writing by some person by said Cheek thereunto lawfully authorized, then you are instructed to find your verdict for defendant, J. R. Cheek." This charge correctly stated the law upon the issue raised by the pleadings and evidence. But we think there was no error in the refusal of the court to give it, for the reason that the issue had been sufficiently submitted to the jury in the portion of the court's general charge which is copied above. The assignment is overruled.

By his second assignment of error appellant complains of the action of the court in refusing to give his second special charge, which is as follows: "You are instructed that J. R. Cheek cannot be held for the debt of Samuel Cisco, or of Hamil & Stewart, unless the promise or agreement, or some memorandum thereof, shall be in writing and signed by said Cheek, or in writing and signed by some person by said Cheek thereunto lawfully authorized. And, if no such prom-ise in writing signed as aforesaid has been introduced in evidence, you are instructed to find your verdict in favor of defendant, Cheek." The substance of this charge was embodied in the court's charge, hence it was not error to refuse it. There was evidence, which will be hereinafter more fully set out, that tended strongly to prove that Cisco's admission to the sanitarium, the medical attention given him, and the expenses incurred in his treatment were upon the orders and at the instance of the defendant Cheek and upon the faith of his credit. This being true, it would have been improper to give the charge in question, had it not been covered in the general charge, because it ignored such element of defendant's liability. The assignment is overruled.

The third assignment is predicated upon the refusal of the court to give defendant's special charge No. 3, which reads as follows: "If you believe from the evidence that defendant, J. R. Cheek, never did promise to pay plaintiff for the care of Samuel Cisco, then you will find your verdict in favor of defendant, J. R. Cheek." There is no error in refusing to give this charge, for the reason that it was fully covered by and embraced in the court's general charge.

Appellant's fourth special charge is as follows: "You are instructed that there has been no legal evidence introduced before you showing any liability on the part of defendant, J. R. Cheek, and you will therefore find your verdict in favor of said Cheek." The refusal of the court to give this charge is made the basis of the fourth assignment of error. The facts giving rise to the controversy are briefly as follows: Defendant was an operator in the Humble oil field. Hamil & Stewart were independent contractors engaged in drilling an oil well in said field for defendant, and Cisco was employed by them. While so employed Cisco fell from a derrick, and was severely injured. He was sent to Houston and placed in Dr. Boyd's Sanitarium, where he received medical attention, and other expenses were incurred in his behalf, amounting to the sum of the judgment. Upon the question of defendant's liability the following testimony was introduced:

D. R. Beatty testified: "One evening about 4 o'clock I saw a man fall out of the derrick where Hamil & Stewart were drilling, and I went to the man and did not know him. He was a stranger to me; but I knew that they were drilling a well under contract with Mr. Cheek; and I went to Mr. Cheek and told him some man had fallen out of Hamil & Stewart's rig, and had gotten hurt, and he came and found the man pretty badly hurt; and he (Cheek) asked me what he had better do with him, and I said, 'Send him to Houston at once.' And he asked where; and I said to Dr. Boyd's Private Sanitarium at 811 Main street. I know I called up Dr. Boyd and asked if he would not send the ambulance to meet the 6 o'clock train, and

he said he would have the ambulance there, and before going in I asked Cheek what I should say to Dr. Boyd when I got there, and he told me that this was not his man and was not working in his employ, but was working for Hamil & Stewart, but that he would see that the bill was paid if he (Boyd) took care of him. Coming in, I did not see Dr. Boyd. He was at the depot; but I saw his head nurse, and told the nurse just what Cheek said, that he did not want the man charged to him because he is not his man. I said, 'I would rather you did not charge it to his personal account. I had rather you charge it to my personal account than charge it to him.' That he was not his man. Next morning I met Dr. Boyd, and, as well as I can recall, I repeated the same thing to Dr. Boyd."

Plaintiff Boyd testified: "During the afternoon of March 13th, I was called over the long-distance telephone from Humble to talk to a man by the name of Feisthamil, who called me over the phone. I got Cisco that afternoon. Hamil brought him to my place with a doctor, but I have forgotten the doctor's name. Cisco was brought there in an ambulance and left there. I did not have a conversation with Mr. Hamil that day; but I did with Feisthamil. I did not have any conversation with Mr. Cheek, the defendant, in regard to this matter until quite a while later. I had a conversation with Mr. Cheek over the phone just before or just after Cisco left; and later he saw me in my office in Houston. Feisthamil brought Mr. Cheek to my office. At least, they came there together. There had been a failure to get anything out of the case in the way of payment from any one. There was a dispute as to who should pay that fee, so I went to Feisthamil and told him what the dispute was, so, according to his agreement with me, he brought Cheek to my office. The matter was talked over, and Cheek stated that he had ordered that man sent there, and agreed to be responsible for his bill and would pay it, and the only thing he wanted was for me to give him time; so that he could get some notes or some agreement from Hamil & Stewart, so that he could get back that money, and he asked for two or three weeks' extension. I took Cisco simply through the credit of Cheek, stated at that time by Feisthamil. I did not take him on the credit of Cisco. The amount was never charged to Cisco; but it was charged to J. R. Cheek." He further testified: "Feisthamil called us, and said an employé of Hamil had been injured that afternoon, and he wanted to send him over to my sanitarium, and that J. R. Cheek said he would be responsible for the bill. I took Cisco through the credit of Cheek, stated at that time by Feisthamil. My recollection is that Cheek said he had authorized it. Cheek said he

would pay it (the bill) himself; that he considered himself personally liable."

There was testimony which would probably have justified a verdict for defendant, but we have set out only such as was most favorable to plaintiff, and that is sufficient, we think, to demonstrate that the special charge set out in the assignment should not have been given. The assignment cannot be sustained.

There was no error in refusing to give defendant's special charge No. 6, which instructed that there was no evidence of any consideration to defendant for any promise on his part subsequently to Cisco's entrance to the sanitarium, because there was no evidence of such promise subsequently made, but, if any such was made, the same was coupled with the admission by defendant of his original liability incurred at the time of Cisco's entrance. Even if not subject to this objection, we think the charge was correctly refused because sufficiently given by the court in the general charge.

We find no reversible errors in the record, and the judgment of the court is affirmed.

Affirmed.